UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PROF-2013-S3 LEGAL TITLE TURST IV, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE, | Case No. 2:17-CV-277 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| REO INVESTMENT ADVISORS V LLC, et al., | |
| Defendant(s). | |

Presently before the court is defendant El Dorado Neighborhood Second Homeowners Association's ("El Dorado") motion for summary judgment. (ECF No. 45). Plaintiff PROF-2013-S3 Legal Title Trust IV, by U.S. Bank National Association, as Legal Title Trustee ("U.S. Bank") filed a response (ECF No. 53), to which El Dorado replied (ECF No. 59).

Also before the court is U.S. Bank's motion for summary judgment. (ECF No. 46). Defendant REO Investment Advisors V LLC ("REO") and El Dorado filed separate responses (ECF Nos. 47, 54), to which U.S. Bank replied (ECF No. 60).

Also before the court is REO's motion for summary judgment (ECF No. 48). U.S. Bank filed a response. (ECF No. 56). REO did not file a reply and the time to do so has passed.

Also before the court is REO's motion for leave to file supplemental points and authorities (ECF No. 67). U.S. Bank filed a response (ECF No. 71), to which REO replied (ECF No. 72).

I.    Facts

This action arises from a dispute over real property located at 1829 Ginger Blossom Avenue, North Las Vegas, Nevada 89031 ("the property"). (ECF No. 1).

James C. Mahan
U.S. District Judge

Lovetta Kanani Seanoa purchased the property on October 1, 2008. (ECF No. 1-2). Seanoa financed the purchase with a loan in the amount of $217,049.00 from Taylor, Bean & Whitaker Mortgage Corp. ("TBW"). (ECF No. 1-3). TBW secured the loan with a deed of trust, which names TBW as the lender, American National Escrow Company as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary as nominee for the lender and lender's successors and assigns. *Id*. On June 11, 2014, U.S. Bank acquired all beneficial interest in the deed of trust via an assignment, which U.S. Bank recorded with the Clark County recorder's office. (ECF Nos. 1-6, 46-1).

On June 24, 2011, El Dorado, through its agent Assessment Management Services ("AMS"), recorded a notice of delinquent assessment lien ("the lien") against the property for the Seanoa's failure to pay El Dorado in the amount of $768.65. (ECF No. 1-8). On April 23, 2012, El Dorado recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $1,687.76 as of April 19, 2012. (ECF No. 1-9).

In an attempt to exercise its right of redemption, U.S. Bank's predecessor in interest requested from El Dorado the superpriority amount of the lien. (ECF No. 46-2). In response, El Dorado provided a payoff ledger of the Seanoa's total amount due from January 2011 to February 2013. *Id*. The payoff ledger shows an outstanding balance of $2,263.39 but does not state what portion of the balance constitutes the superpriority portion of the lien. *Id*. The ledger also does not include charges for maintenance and nuisance abatement. *Id*. The ledger does state, however, that El Dorado's annual assessment against the property was $120.00 as of January 2011, $105.00 as of January 2012, and $105 as of January 2013. *Id*.

U.S. Bank's predecessor in interest used El Dorado's ledger to calculate the superpriority amount as $78.75, the sum of nine months of common assessments based on the January 2013 assessment. *Id*. On April 18, 2013, U.S. Bank's predecessor in interest sent a letter and a check for that amount to El Dorado. *Id*. The letter explained that the check was the sum of nine months of common assessments and intended to pay off the superpriority portion of the lien. *Id*. El Dorados rejected the payment without explanation. *Id*.

On August 1, 2013, El Dorado recorded a notice of foreclosure sale against the property. (ECF No. 1-10). On August 29, 2014, El Dorado sold the property in a nonjudicial foreclosure sale to REO Investment advisors IV LLC in exchange for $29,500.00. (ECF No. 1-11). On September 10, 2014, REO Investment advisors IV LLC recorded the deed of foreclosure with the Clark County recorder's officer. *Id*. On September 29, 2014, REO Investment Advisors IV LLC transferred the property to REO via quitclaim deed, which REO recorded with the Clark County recorder's office on October 15, 2014. (ECF No. 1-12).

On January 30, 2017, U.S. Bank initiated this action. (ECF No. 1). In the amended complaint, U.S. Bank alleges eight causes of action: (1) quiet title/declaratory relief against all defendants; (2) declaratory relief under the Fifth and Fourteenth Amendments against all defendants; (3) quiet title under the Fifth and Fourteenth Amendments against REO; (4) permanent and preliminary injunction against REO; (5) unjust enrichment against REO; (6) wrongful foreclosure against El Dorado; (7) negligence against El Dorado: and (8) negligence *per se* against El Dorado. (ECF No. 12). On August 6, 2018, the court dismissed U.S. Bank's seventh and eighth causes of action.

Now, the parties have filed cross-motions for summary judgment, requesting the court to resolve whether the foreclosure sale extinguished the deed of trust. (ECF Nos. 45, 46, 48).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all

**James C. Mahan**
**U.S. District Judge**

1  justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the

2  nonmoving party is merely colorable or is not significantly probative, summary judgment may be

3  granted. *See id.* at 249–50.

**III.  Discussion**

5      As a preliminary matter, the court will grant REO's motion to file supplemental points and

6  authorities (ECF No. 53) pursuant to Local Rule 7-2(g) as the points and authorities include new

7  evidence regarding El Dorado's assessments against the property.

8      The parties have filed cross-motions for summary judgment, disputing whether the

9  foreclosure sale extinguished the deed of trust. (ECF Nos. 45, 46, 48).

10     Under Nevada law, "[a]n action may be brought by any person against another who claims

11  an estate or interest in real property, adverse to the person bringing the action for the purpose of

12  determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require

13  any particular elements, but each party must plead and prove his or her own claim to the property

14  in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v.*

15  *Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation

16  marks omitted). Therefore, a party must show that its claim to the property is superior to all others

17  in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d

18  314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove

19  good title in himself.").

20     Section 116.3116(1) of the Nevada Revised Statutes[1] allows an HOA to place a lien on its

21  homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1).

22  Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other encumbrances with

23  limited exceptions—such as "[a] first security interest on the unit recorded before the date on

24  which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. §

25  116.3116(2)(b).

26

27      [1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except
    where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are
28  to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation
    occurred.

The statute then carves out a partial exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

NRS 116.3116 *et seq.* ("Chapter 116") permits an HOA to enforce its superpriority lien with a nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

---

[2] The statute further provides as follows:

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of foreclosure sale, and the recorded trustee's deed upon sale. *See* (ECF No. 1-8, 1-9, 1-10, 1-11). Further, the recorded foreclosure deed contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 1-11); *See id.* at 1112. Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

U.S. Bank argues that the foreclosure sale did not extinguish the deed of trust because U.S. Bank's predecessor in interest tendered the superpriority portion of the lien. (ECF No. 46). The court agrees.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . ."). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016) ("NRS 116.3116(2) . . . is limited to an amount equal to the common expenses assessments due *during the nine months before foreclosure*") (emphasis added).

In *Bank of America*, the Nevada Supreme Court held that a foreclosure sale did not extinguish a first deed of trust when Bank of America, the holder of the deed of trust, used the HOA's representations to calculate and tender the sum of nine months of delinquent assessments. *Bank of America, N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 121 (Nev. 2018) ("*Bank of America*"). Although the superpriority portion of an HOA lien typically includes maintenance and nuisance abatement charges, the court held that "Bank of America tendered the correct amount to satisfy the superpriority portion of the lien . . . [because] the HOA did not indicate that the property had any charges for maintenance or nuisance abatement." *Id*. at 118.

The Nevada Supreme Court's holding in *Bank of America* controls the court's analysis in this case. Like *Bank of America*, where Bank of America relied on the HOA's representations to calculate nine months of assessments, U.S. Bank's predecessor relied on El Dorado' ledger to calculate nine months of assessments. *See id*. at 118; (ECF No. 46-2). Further, El Dorado, like the HOA in *Bank of America*, did not indicate that the property had any charges for maintenance or nuisance abatement. *See Bank of America*, 427 P.3d at 118; (ECF No. 46-2). Thus, when U.S. Bank's predecessor sent to El Dorado a check for nine months of assessments based on the January 2013 annual assessment, it properly tendered the superpriority portion of the lien. Therefore, the nonjudicial foreclosure sale did not extinguish the deed of trust. *See id*. at 121 ("It follows that after a valid tender of the superpriority portion of an HOA lien, a foreclosure sale . . . cannot extinguish the first deed of trust").

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that El Dorado' motion for summary judgment (ECF No. 45) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that U.S. Bank's motion for summary judgment (ECF No. 46) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that REO's motion for summary judgment (ECF No. 48) be, and the same hereby is, DENIED

1    IT IS FURTHER ORDERED that REO's motion for leave to file supplemental points and
2  authorities (ECF No. 67) be, and the same hereby is, GRANTED.
3      The clerk shall enter judgment accordingly and close the case.
4      DATED December 6, 2018.

5                                    _____
6                                    UNITED STATES DISTRICT JUDGE
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**James C. Mahan**
**U.S. District Judge**